**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL MORLEY and MICHELLE
MORLEY, individually and as parents,
natural guardians and next friends of
M.M., a minor; and M.M., a minor, by and
through his parents, natural guardians and
next friends, MICHAEL MORLEY and
MICHELLE MORLEY,

                    Plaintiffs,

vs.

HARBOUR WALK HOMEOWNERS'
ASSOCIATION, INC., CHARLES "CHUCK"
D. PAGLICCO, JOHN DA PUZZO, and
SUSAN AGRUSO,

                    Defendants.

_____/

CASE NO. _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

COME NOW Plaintiffs, M.M., a minor, by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHAEL MORLEY, and MICHAEL MORLEY and MICHELLE MORLEY, individually and as parents, natural guardians, and next friends of M.M. (collectively "Plaintiffs'), by and through their undersigned counsel and sue Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO (collectively "Defendants"), and state as follows:

**I. NATURE OF THE ACTION**

1.      This is a civil action brought pursuant to the federal Fair Housing Act [hereafter "FHA"], 42 U.S.C. §§ 3601, *et seq.*, 42 U.S.C. § 1982, and the Florida Fair Housing Act [hereafter "FFHA", Fla. Stat. §§ 760.20, *et seq.*, for damages and injuries arising from the Defendants'

unlawful discrimination against Plaintiff M.M., a minor and a person with disabilities, and his parents, Plaintiffs MICHAEL MORLEY and MICHELLE MORELY, persons associated with a person with disabilities. The Defendants violated the FHA and FFHA by refusing to make reasonable accommodations to their rules, polices, practices, and/or services when such an accommodation was necessary to afford the Plaintiffs an equal opportunity to use and enjoy their dwelling, and by illegally retaliating against and attempting to intimidate Plaintiffs.

2.      Plaintiffs seek immediate declaratory and injunctive relief.

## II. JURISDICTION AND VENUE

3.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 3601, *et seq.*, and § 3613.

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      The Court has jurisdiction to declare the rights and legal relations of the parties and to order further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court is authorized to issue a preliminary injunctive relief and a temporary restraining order pursuant to Federal Rules of Civil Procedure 65(a) and 65(b), and to award relief under 42 U.S.C. § 300a-7(c) and (d), including but not limited to, damages and attorneys' fees.

6.      Venue is proper under 28 U.S.C. § 1391(b) because the Defendants reside in this District, and the events giving rise to the Plaintiffs' claims arose in this District.

## III. PARTIES

7.      "Harbour Walk Community" refers to a residential community located in Bradenton, Manatee County, Florida.

8.      PLAINTIFF M.M. ("M.M." and/or "minor Plaintiff M.M.") is a resident of Bradenton, Manatee County, Florida, a minor, an individual with disabilities that qualify him for the

protections of the FHA and FFHA, and at all times relevant resided in the Harbour Walk Community.

9.     PLAINTIFF MICHAEL MORLEY ("Michael Morley") is a resident of Bradenton, Manatee County, Florida, the father of minor Plaintiff M.M., and at all times relevant resided with minor Plaintiff M.M. in the Harbour Walk Community. He brings this action on his own behalf and as parent, natural guardian, and next friend for his son, M.M.

10.     PLAINTIFF MICHELLE MORLEY ("Michelle Morley") is a resident of Bradenton, Manatee County, Florida, the mother of minor Plaintiff M.M., and at all times relevant resided with minor Plaintiff M.M. in the Harbour Walk Community. She brings this action on her own behalf and as parent, natural guardian, and next friend for her son, M.M.

11.     Harbour Walk Community is governed by DEFENDANT HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC. [hereafter "the Association" and/or "Defendant Association"].

12.     The Association is a Florida non-profit corporation, organized and operating pursuant to Chapter 720, Florida Statutes.

13.     Although the Harbour Walk Community is located in Manatee County, Florida, the Association's principal place of business and mailing address is 2477 Stickney Point Road, Suite 118A, Sarasota, Florida 34321.

14.     The Association is responsible for administering and governing the Harbour Walk Community pursuant to the Association's Declaration, Articles of Incorporation, By-Laws, and its Rules and Regulations, and amendments thereto. It also sets, approves, and enforces the policies, rules, regulations, and practices for the Harbour Walk Community.

15.    The housing units governed by the Association are "dwellings" within the meaning of 42 U.S.C. § 3602(b) of the FHA, as well as Fla. Stat. § 760.22(4) of the FFHA.

16.    The Association is subject to the anti-discrimination provisions of both the FHA and FFHA.

17.    DEFENDANT CHARLES "CHUCK" D. PAGLICCO ("Paglicco") is a resident of Bradenton, Manatee County, Florida, and at all times relevant resided at 559 Fore Drive, Bradenton, Manatee County, Florida 34208, located in the Harbour Walk Community. Paglicco is and at all times relevant was a Member of the Association, an Officer and Member of the Association's Board of Directors, and the Association's President, and sets, approves, and/or otherwise enforces the policies, rules, regulations, and practices for the Harbour Walk Community. Defendant Paglicco was personally involved in the discriminatory acts described *infra*.  As such, each reference to the Association includes Defendant Paglicco.

18.    DEFENDANT JOHN DA PUZZO ("Da Puzzo") is a resident of Bradenton, Manatee County, Florida and at all times relevant resided at 580 Fore Drive, Bradenton, Manatee County, Florida 34208, located in the Harbour Walk Community. Da Puzzo is and at all times relevant was a Member of the Association, an Officer and Member of the Association's Board of Directors, and the Association's Treasurer, and sets, approves, and/or otherwise enforces the policies, rules, regulations, and practices for the Harbour Walk Community, Community and was personally involved in the discriminatory acts mentioned *infra*. As such, each reference to the Association includes Defendant Da Puzzo.

19.    DEFENDANT SUSAN AGRUSO ("Agruso") is a resident of Bradenton, Manatee County, Florida and at all times relevant resided at 567 Fore Drive, Bradenton, Manatee County, Florida 34208, located in the Harbour Walk Community. Agruso is and was at all times relevant

a Member of the Association and the Chair of the Association's Architectural Review Board ("ARB") Committee, which sets, approves, and/or otherwise enforces the policies, rules, regulations, and practices for the Harbour Walk Community, Community and was personally involved in the discriminatory acts mentioned *infra*. As such, each reference to the Association includes Defendant Agruso.

## IV. FACTUAL ALLEGATIONS

20.    Plaintiffs reside and resided at all times relevant at 591 Fore Drive, Bradenton, Manatee County, Florida 34208 (the "Morley residence") which is located within the Harbour Walk Community.

21.    In or around February 2019, Michael Morley and Michelle Morley ("the Morleys"), in accordance with the Association's Rules and By-Laws, submitted an application and supporting documentation to the Association's Architectural Review Board ("ARB") for permission to install a fence on the side of their home, i.e., the Morley residence, entirely on and within the Morleys' own property. (February 2019 Application with Supporting Documents are collectively marked, attached, and incorporated herein as "Exhibit 1.")

22.    The Morleys indicated that the fence was for the security and confinement of their dog, "Bullet"; however an additional purpose was and is the safety and welfare of their minor son, M.M.

23.    M.M. is nine (9) years old. He was born in Russia to a heroin-addicted mother and was adopted from a Russian orphanage by the Morleys at eleven (11) months old. At age five, M.M. was diagnosed with and began treatment for Attention-Deficit/Hyperactivity Disorder ("ADHD"), a disorder marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development. M.M. suffers from and has a history

of suffering from a physical or mental impairment which substantially limit one or more of his major life activities, and/or has a record of having such an impairment, and/or is regarded as having such an impairment. M.M. is a person with a "handicap" pursuant to 42 U.S.C. § 3602(h) and Fla. Stat. § 760.22. (6/26/2019, Carlos Mendez, M.D. Verification is marked, attached, and incorporated herein as "Exhibit 2" [hereafter "Dr. Mendez Disability Verification"].)

24.    Wishing to protect their minor son's privacy and not anticipating any issue with fencing their own yard, the Morleys did not initially reveal M.M.'s disability or explain the importance of the fence to M.M.'s safety.

25.    ADHD is a neurodevelopmental disorder that limits a child's ability to control impulsive behaviors, and is often accompanied by challenges with learning and social skills. These challenges include inability to focus, over activity, acting without thinking, sensory sensitivities and sleep disorders, as well as mental health challenges.  In a child with ADHD, "impulsivity" means hasty actions that occur in a moment and that have a high potential for harm. This can include running or dashing around, climbing in situations when it is inappropriate or unsafe and elopement (wandering or bolting from places of safety). Consequently, securing the home and home environment, specifically the use of fencing to keep the child within a confined safe area, are considered paramount to an ADHD's child's safety and alleviating concomitant stress to his or her family.

26.    Because their son M.M. is disabled, Michael Morley and Michelle Morley are persons associated with a person with a disability.

27.    In February of 2019, the Morleys moved from Los Angeles, California to Bradenton, Florida. Among the reasons for their move was so that M.M. could have a "fresh start" and

escape some of the stereotypes, limitations, preconceptions, and discrimination both they and M.M. experienced when people merely heard or otherwise learned that M.M. had ADHD.

28.     Among Michael Morley's and Michelle Morley's priorities was securing M.M.'s safety, which included, *inter alia*, the secure fencing of their home.

29.     In conformity with the Association's governing documents, the Morleys' submitted their application and supporting material for installation of a fence for M.M.'s safety and protection. (Pertinent excerpts from Declaration of Covenants, Restrictions and Easements for Harbour Walk and By-Laws of Harbour Walk Homeowners' Association, Inc., and Owners Rules and Regulations [Eff. December 10, 2018] are collectively marked, attached, and incorporated herein as Exhibits 3; *cf.* Morley's Application and Supporting Documents, Exhibit 1.)

30.     The Morleys hired "Foremost Fence" to install their fence, primarily because the fencing company had installed multiple fences within the Harbour Walk Community and because the same company had installed the fence for their adjacent neighbor, Todd Schwartz.

31.     On March 11, 2019, installation of the Morleys' fence was completed, consistent with their original, submitted application and supporting documents.

32.     At all times material hereto, the Association has a policy restricting the color, placement of, height, and length of fences on property lots.

33.     At all times hereto, the Morleys' fence conforms to all Association restrictions and rules with one exception: "The fence is installed in excess of 12' from back corner of residence." In other words, the fence is closer to the front of Morleys' home than the Association contends it should be.

34.     The Association's policy and rules regarding placement of fences is strictly based upon perceived aesthetics.

35.     Prior to April 2019, the Association's enforcement of its policy and rules regarding fencing was, at best, inconsistent.

36.     On April 8, 2019, the Association sent the Morleys a "Notice of Non-Compliance" regarding the fence. (4/8/2019 Non-Compliance letter is marked, attached, and incorporated herein as "Exhibit 4.")

37.     The Association advised the Morleys that fining for "Non-Compliance" would begin. (*Id.*)

38.     On or around April 9, 2019, Michael Morley provided the Association material depicting and otherwise evidencing that several fences at other homes in the Harbour Walk Community did not conform to Association's policy and rules regarding fencing because of materials, color, length, placement, height, etc. As noted by Michael Morley, none of the other homeowners with non-conforming fences were being fined or otherwise penalized by the Association. (4/9/2019 Conveyance Communication and supporting material are collectively marked, attached, and incorporated herein as "Exhibit 5.")

39.     From April 9 through April 30, 2019, the Association refused to retract from its position that the Morleys' fence was in violation of its policy and rules regarding fencing despite the fact that other homes in the Harbour Walk Community were also in violation of the 12 foot setback requirement.

40.     Sometime between May 1 and May 7, 2019, Michael Morley spoke to Ed Talman of Argus Property Management, the Association's assigned Property Manager ("Property Manager Talman"), and disclosed his son's disability, admitting that in addition to confining the family dog, the fence is needed to accommodate his son's disability, and explaining the imperative need for the existing fence to remain.

41.   On May 8, 2019, Association President Paglicco came to the Morleys' home.

42.   When Michael Morley brought up his son's disability and explained M.M.'s disability-related need for protective fencing, Paglicco called Michael Morley a "liar."

43.   As of May 8, 2019, the Association was fully aware that M.M. was and is disabled, that the Morleys' were requesting a waiver of the fence location policy as a reasonable accommodation, that the requested accommodation was necessary to afford M.M. an equal opportunity to use and enjoy their dwelling, and that the need for and the Morleys' request for accommodation of his disability in the form of allowing the existing fence to remain was necessary, even though it meant that the fence on the side of the Morleys' home would extend more than 12 feet from the rear of the Morleys' home.

44.   On or around May 6, 2019, the Morleys retained Lori M. Dorman, Esq. of Baker, Paul & Dorman ("Attorney Dorman"), to represent them in obtaining a waiver of the Association's fence policy as a reasonable accommodation of M.M.'s disability.

45.   On May 9, 2019, Attorney Dorman, by Certified Mail and on behalf of the Morleys, sent a letter to Property Manager Talman memorializing both her and Michael Morley's earlier requests for the Association's approval of the Morleys' existing fence as a reasonable accommodation of M.M.'s disability. (5/9/2019 Letter documenting Third Request for Reasonable Accommodation is marked, attached, and incorporated herein as "Exhibit 6.")

46.   Included in that May 9, 2019, letter was Attorney Dorman's offer to provide medical verification of M.M.'s disability and need for the protective fencing. (*Id.*)

47.   On June 10, 2019, the Association, through its attorney, Michael J. Attorney Prohidney ("Attorney Prohidney"), confirmed that a May 8, 2019, meeting between Michael Morley and

President Paglicco had been held. (6/10/2019, Attorney Prohidney Letter Asserting Association's Rejection of FHA Obligations is marked, attached, and incorporated herein as "Exhibit 7.")

48.    On June 10, 2019, the Association acknowledged the Morleys' request for waiver of the Association's fence set-back policy as a reasonable accommodation of M.M.'s disability and concomitant request to allow the existing fence to remain in furtherance of that accommodation. (*Id.*)

49.    On June 10, 2019, the Association expressly "acknowledge[d] its responsibilities under the Fair Housing Act (the "Act')," but deemed itself the arbiter as to when it was obligated to comply with those responsibilities:

> [T]he Morleys have not been consistent with their requests for the fence and have generally failed to abide by the terms of the Association's governing documents. The Morleys did not, in fact, share any information regarding their son until long after they improperly installed the fence. Further, such information was only provided after several other justifications were provided to the Association. **While the Association understands that the Morleys may have wanted to be discreet about their son's condition,** the multiple additional reasons provided, combined with the Morleys' failure to follow the Association's rules and regulations (and flagrant disregard for the conditional approval) creates credibility issues with your clients. Regardless, the fence was improperly installed without approval, and the noncompliant structure must immediately be removed**. The fines will also remain and must be paid immediately.**
>
> **If, <u>after the fence is removed</u>, the Morleys' wish to request a reasonable accommodation to the Association's standards for their disabled son pursuant to the FHA,** please advise your clients to provide the following: confirmation form a "health care provider" the answer to the following two questions: (1) does the person have a disability; and (2) is the reasonable accommodation (a slightly larger fenced in yard) needed to alleviate one or more symptoms of the disability. **Once received, the Association will consider the request in accordance with federal and state law**.

(*Id.*) (emphasis added).

50.     This letter confirms that the Association expressly refused to consider, much less grant, the Morleys' request for waiver of the Association's fence set-back requirement as a reasonable accommodation of M.M.'s disability. (*Id.*)

51.     The Association purposefully and intentionally refused to comply with its FHA and/or FFHA obligations, lip-servicing that it would "consider" conforming to the law in the future only if the Morleys, at considerable expense and at the risk of their disabled son's safety, had the existing fence removed. (*Id.*)

52.     On June 28, 2019, Attorney Dorman sent a letter to Attorney Prohidney, re-averring the Morleys' request for waiver of the Association's fence set-back restriction as a reasonable accommodation of their son's disability and to allow the existing fence to remain so as to ensure M.M.'s safety, and specifically asked the Association to reconsider its denial of that request:

> As you know, we have the pleasure of representing Mr. and Mrs. Michael Morley with regard to their minor child, [M.M.], and their home at 591 Fore Drive, Bradenton.
>
> I received your letter of June 10, [2019], reaffirming the denial by Harbour Walk Homeowners' Association, Inc. (the "Association") for a reasonable accommodation and modification to their home for their son, [M.M.]. At Mr. and Mrs. Morleys' request, I am writing once more to request that the Association's Board reconsider this matter and allow them to have a fenced side yard on their property and approve the fence as proposed/installed.
>
> In furtherance of that request, enclosed please find a signed *Verification of Need for a Reasonable Accommodation/Reasonable Modification under the Fair Housing Act*. As you'll see, [M.M.'s] treating pediatrician, Dr. Carlos Mendez, has affirmed that [M.M.] has a physical or mental impairment that limits a major life activity and that the accommodation requested is "necessary and will achieve its stated purpose." Dr. Mendez added information to the Verification, confirming that [M.M.] has "significant ADHA that may affect safety if [he is] not sufficiently protected."
>
> Should the Association continue to deny the Morleys' request, please be advised that the Morleys intend to file a claim with HUD for housing discrimination on the basis of their son's disability. The Association may wish to notify its insurance carrier of this claim if this request is denied.

Thank you for your time and consideration.

(6/28/2019 Attorney Dorman Letter Re-Averring Fourth Request for Reasonable Accommodation is marked, attached, and incorporated herein as "Exhibit 8.")

53.     Included with Attorney Dorman's letter was a "*Verification of Need for a Reasonable Accommodation/Reasonable Modification under the Fair Housing Act*," signed by M.M.'s pediatrician, Dr. Carlos A. Mendez, confirming and stating, *inter alia*, that: (1) M.M. had a disability that substantially impaired one or more of his major life activities, and (2) the requested accommodation of allowing the existing fence to remain was reasonable and necessary to afford M.M. the full enjoyment of his home. (6/26/2019 Dr. Mendez Verification, Exhibit 1.)

54.     The Association disregarded the Morleys' plea for reconsideration of the denial of their previous requests for reasonable accommodation and ignored Dr. Mendez's signed Disability Verification that same was reasonable and necessary, thumbing its proverbial nose at its obligations under the FHA and FFHA in the process.

55.     On July 17, 2019, despite its illegal levying of fines and despite its prior statements, written and verbal, denying the Morleys' request for reasonable accommodation, the Association attempted to backpedal from its position of denial, maintaining that it "has not made a determination on your clients' request for reasonable accommodation under the law to excuse them from complying with the terms of the Association's Declaration."  (07/17/2019, Attorney Prohidney Back Pedal Letter is marked, attached, and incorporated herein as "Exhibit 9.")

56.     Once again deigning itself above the law as well as the arbiter as to when it would comply with the law, the Association further stated: "As you know, the process requires your clients to request the reasonable accommodation, at which time the Association will consider the request and determine if there are other means available to accommodate such request." ( *Id.*)

57.     On July 22, 2019, this time through its Property Manager, the Association:

(a) reaffirmed its position of denial and its contention that the Morleys were in violation of Association rules/policies because their fence "is installed in excess of 12' from back corner of residence";

(b) declared that the Morleys would be fined "up to **$100.00 per day up to $10,000.00 per occurance** [sic]" retroactive to **July 12, 2019**;

(c) threatened, *inter alia*, to trespass on the Morleys' private property and destroy the fence the Association knew was necessary for the Morleys' son's safety, as had been personally verified by his treating pediatrician; and, finally

(d) "invited" the Morleys to an August 12, 2019, "hearing" at the "Faith United Church of Christ, Bradenton, Florida," stating:

> **Your install of the fence was not per the Instructions and documents you received from the ARB Chairperson and committee. In addition proper permits were not obtained from the government agencies for the fwnce [sic] install. The fence is installed in excess of 12' from back corner of residence.**
>
> **This is your Notice of Invitation to a scheduled hearing: August 12, 2019 5pm Faith United Church of Christ, Bradenton, Florida.**
>
> By way of this letter, Harbour Walk Board of Directors respectfully requests that you attend to this matter by 08/12/2019. Your files were reviewed and an appeal has not been not [sic] granted. The request was approved with conditions that were not met.
>
> You will now be fined up to **$100.00 per day up to $10,000.00 per occurance** [sic][.] **(6.2) Declaration)** commencing on **07/12/2019**. The Association also has the authority to remove the fence and pass all liens, expences [sic], fees including legal to your responsibility if necessary.

(7/22/2019, Property Manager Talman Denial/Fine/Threat/Invite to 8/12/19 Hearing is marked, attached, and incorporated herein as "Exhibit 10" [emphasis in original].)

58.     The purpose of the "hearing" and "invitation" for the Morleys' attendance was unknown, as the Association made clear that the Morleys' request for reasonable accommodation had been denied, that the decision to fine or otherwise penalize the Morleys had already been made, and that the fining process had already begun. (*Id.*)

59.     The Morleys' contract for the installation of the fence included payment for a fence permit as such permit was required by the City of Bradenton. Upon learning that Foremost Fence had not filed the necessary permitting paperwork with the City of Bradenton, the Morleys made arrangements with the fence contractor to have a permit obtained for the fence.

60.     On Friday, July 26, 2019, an Inspector from the City of Bradenton, Building and Construction Division, inspected the Morleys' fence.

61.     On Monday, July 29, 2019, the Morleys forwarded the *Certificate of Completion* issued by the City of Bradenton, Building and Construction Division for the fence at "591 Fore Dr" (i.e., the Morleys' home), certifying that "The scope of work proposed at application and for which a permit was issued has been inspected for compliance with the Florida Building and reference codes" to the Association, tendering copies of the *Certificate* to both Property Manager Talman and ARB Chair Agruso. (07/29/2019 Email Communication from the Morleys is marked, attached, and incorporated herein as "Exhibit 11"; *Certificate of Completion* is separately marked, attached, and incorporated herein as "Exhibit 12.")

62.     On August 8, 2019, Attorney Dorman contacted Attorney Prohidney and again requested that the Association reconsider its refusal to consider and grant the Morleys' request for reasonable accommodation and allow the fence to remain. Attorney Prohidney re-affirmed the Association's position that unless and until the fence was removed, the Association would not consider the Morleys' request for reasonable accommodation or modification.

63.     Also on August 8, 2019, Attorney Dorman sent a letter to Association Property Manager Talman, *inter alia*: (1) conveying all of the documents and materials previously provided to the Association evidencing: (a) the Morleys' application for permission to install the fence, (b) reiterating the good faith installation of the fence in conformity with the Association's Architectural Review Board's ("ARB") permission and instructions, and (c) confirming adherence to all government ordinances, rules, and regulations pertaining to permitting and installation; (2) asking that the Association reconsider its denial of the Morleys' previous requests and requesting, **for the fifth time**, that the Association grant the reasonable accommodation of allowing the existing fence to remain; and (3) affirming that the Morleys would appear at the August 12, 2019, hearing "and will present testimony and evidence in defense of the imposition of these fines." (8/8/2019 Attorney Dorman Letter Providing Documentation of Fence Erection & Completion Compliance and Re-Averring Fifth Request for Reasonable Accommodation is marked, attached, and incorporated herein as "Exhibit 13"; documentation included therewith is collectively marked, attached, and incorporated herein as "Exhibit 14.")

64.     On August 3, 2019, the Morleys submitted three (3) new applications to the ARB, two of which concerned drainage hazards and one a sidewalk improvement, none of which involved or related to fencing or the existing fence. (8/3/2019 Applications and Supporting Documents are collectively marked, attached, and incorporated herein as "Exhibit 15.")

65.     In response, the Association fortified and perpetuated its retaliation by refusing to even consider any other applications from the Morleys whatsoever -- regardless if same were for "architectural" improvements or hazard elimination -- until the Morleys capitulated to the Association's demand that the fence be removed.

66.     On August 11, 2019, Michael Morley asked why only one of the Morleys' three requests for non-fence improvements was on the next meeting agenda, and Chair Agruso responded:

> As you are aware, **the ARB cannot review any of your ARB applications until the fence is removed**. These improvements are not allowed without ARB approval. The sidewalk repair will be removed from the agenda this evening. I will keep your applications on file for possible consideration at a future time.

(8/11/2019 Michael Morley Missing Agenda Items Inquiry and 8/12/2019 ARB Chair Agruso's Response are marked, attached, and incorporated herein as "Exhibit 16" [emphasis in original], as "A" and "B," respectively.)

67.     On August 12, 2019, the Morleys attended the "hearing" with Attorney Dorman, at the scheduled time of 5:00 p.m. (*See* Talman Denial/Fine/Threat/Invite, Exhibit 10.) However, neither the Association's Board of Director nor members of its ARB Committee were present.

68.     After some time had passed with no appearance by any Association representatives, Todd Schwartz, one of the Morleys' neighbors who intended to present testimony on the Morleys' behalf, called President Paglicco who said there had been a "mistake" as the hearing was not scheduled to start until 6:30 p.m.

69.     The "hearing" did not begin until 7:00 p.m. however, at which time President Paglicco angrily advised that the hearing was "closed" and demanded that the Morleys' neighbors leave. The neighbors ultimately remained and the Morleys explained that they had installed the fence not just for their dog, but because the fence is necessary to provide their disabled son a safe and secure place to play.

70.     During the August 12, 2019, proceeding, the Morleys cited from the Association's ARB Standards which expressly provide for fence distance deviations: "[while] fences should not be placed further forward tha[n] 10 to 12 feet from the back line of the house[,] [o]ther distances may be considered, but will be reviewed for impact on neighbors and appearances within the

community." (ARB Review Standards, Revised November 2018, are marked, attached, and incorporated herein as "Exhibit 17" [hereafter "ARB Standards"].)

71.     The Association once again completely disregarded the Morleys' request for accommodation of their disabled son's disability in the form of exemption from the "10 to 12 feet from the back line of the house" fence restriction and ignored that its own ARB Standards already carved out "considerations" or exemptions from that restriction. Instead Agruso and another Board Member spoke, repeated the Association's unsubstantiated claims of the Morleys' intentional violation, renewed its threats of retaliation and impending trespass, and steadfastly refused to even acknowledge M.M.'s medical needs. At the conclusion of the meeting, the Association's Covenants Committee met privately to vote.

72.     On August 13, 2019, the Association's Covenants Committee Chair, Chip Muegel, came to the Morleys' home and delivered the news that: no fine had been issued at the 8/12 meeting; the decision to do so had been "tabled" (deferred) for 30 days; and the Committee wanted to "help find a solution." Michael Morley and Muegel then walked the fence and discussed the reasons for it as well as how it did not adversely impact the neighbors.  Although the fence was consistent in appearance with other fences on Fore Drive, Michael Morley offered the suggestion of "installation of additional plants" to make the fence less noticeable and therefore further minimizing any potential impact on its appearance within the community.

73.     On August 23, 2019, Property Manager Talman sent the Morleys a "14 day Notice of Invitation" to a "reconvened hearing" on September 9, 2019, at 6:30 p.m., deceptively titled "Sixth Notice," stating:

> **At this hearing you will be able to present any material not previously presented for the committee to arrive to a final decision in your case.**

> **Your install of the fence was not per the instructions and documents you received from the ARB chairperson and committee [sic] The fence is installed in excess of 12' from back corner of residence.**

(8/23/2019 Property Manager Talman Notice of Invitation and Threat Continuation is marked, attached, and incorporated herein as "Exhibit 18" [emphasis added].)

74.     The Association also reiterated its threats to trespass on the Morleys' property, forcibly remove the fence needed for their disabled nine-year old's safety, and implement fines, liens, and seek, *inter alia*, its attorney's fees:

> If the committee decides to approve the fines your will now be fined up to **$100.00 per day up to $10,000.00** (**6.2 Declaration**) commencing on **07/12/2019**. The Association also has the authority to remove the fence and all [sic] pass all liens, expenses, fees including legal to your responsibility if necessary.

(*Id.*) (emphasis in original.)

75.     The Morleys were confused by the "Notice" and its contents, and on August 25, 2019, Michael Morley sent an email to Property Manager Talman asking for clarification:

> We were advised that the Covenant committee in August decided not to fine us and we have not received any written notice. Per the portal, again without written notice to us or our attorney – it appears that another hearing has been scheduled for us?

(8/25/2019 Michael Morley Email is marked, attached, and incorporated herein as "Exhibit 19.")

76.     On August 26, 2019, Association Property Manager Talman responded:

> Mr. Morley, at the last Covenants meeting the violation discussion was '**tabled**' per the committee gathering more information and now have decided to reconvene to finish the discussion if any new materials need to [sic] present not so done at the previous meeting. Attached is your notice of meeting and has been forwarded to you VIA certified mail.

(8/26/2019 Association Property Manager Talman Response Email is marked, attached, and incorporated herein as "Exhibit 20" [emphasis in original].)

77.     On September 9, 2019, the Association "hearing" was held, at which the Morleys were aggressively verbally attacked whenever they tried to explain that the fence is necessary to accommodate M.M.'s disability.

78.     The Morleys did not have legal counsel at the September 9, 2019, proceeding, but the Association did.

79.     On or around September 10, 2019, the Morleys received a Letter from Property Manager Talman, deceptively titled "Seventh Notice," stating:

> **This is your Notice of Fining derived from a Covenants Committee hearing you attended on September 9, 2019[,] at 6:30 PM located at Faith United Church of Christ, Bradenton, Florida.**
>
> **The Covenants [C]ommittee voted unanimously to begin fining of $100.00 per day up to a maximum of $10,000 retroactive to July 12, 2019[,] as stated in previous notices to you. This fining will continue until the violation has been solved to the acceptance of the Board of Directors as stated in the ARB restrictions or through agreements mutually agreed to with the Board of Directors.**
>
> **Your install of the fence was not per the Instructions and documents you received from the ARB Chairperson and committee [sic] The fence is installed in excess of 12' from back corner of residence.**
>
> **Future ARB requests are hereby tabled until the above violation has been solved as stated above approved by the Board of Directors. (Section 12.9 of the Declaration and Covenants)[.]**
>
> We are sure you can appreciate the purpose for the Restrictions and our desire to maintain the exclusive residential community that we enjoy Thus, this is a reminder and request for your cooperation in making the corrective changes as noted.

(9/10/2019 Association Denial Affirmation is marked, attached, and incorporated herein as "Exhibit 21" [emphasis in original][hereafter "Denial Affirmation"].)

80.     At no time has the Association, or anyone on its behalf, requested further medical verification or any other information regarding M.M.'s disability or the related need for a reasonable accommodation outside of Dr. Mendez's Verification provided on June 28, 2019.

81.     The Denial Affirmation was on Association letterhead and signed "On behalf of The Board of Directors." (*Id.*)

82.     Without ever having made any inquiry as to M.M.'s disability or need for the reasonable accommodation of allowing the existing fence to remain, the Association's Board of Directors hosted two hearings at a venue which general Harbour Walk Community members – i.e., not limited to the Board Members – attended, thus forcing the Morleys to reveal and discuss confidential and protected health information regarding their minor son with the general Harbour Walk Community. (*See id.*)

83.     During these hearings, the Association's Board of Directors, including Defendants Paglicco and Da Puzzo, and ARB Committee Chair Agruso, openly, verbally, and publicly disclosed, published, disparaged, and ridiculed the Morleys' request for reasonable accommodation of their son's disability, and their request for waiver of the Association's fence restriction policy.

84.     The Association approved fences which deviated in distance, color, and/or from its ARB Standards for at least two other homes in the Harbour Walk Community in August of 2019.

85.     The Morleys have not received any complaints from any of their neighbors regarding the existing fence, and, in fact, have the approval and assurance from adjacent neighbors that the fence is fine exactly as is, and does not pose any problem.

86.     Attorney Dorman provided the Association and its legal counsel with her contact information and invited the representatives to contact her with any questions.

87.     As of the date of the filing of this pleading, neither the Association, its attorneys, nor Board of Directors, including the named Defendants, have contacted Attorney Dorman to request additional information regarding M.M.'s disability or related need for an accommodation.

88.     As of the date of the filing of this pleading, the Association maintains that it will not even consider the Morleys' request for reasonable accommodation of allowing the existing fence to remain unless and until the fence is removed.

89.     As of the date of the filing of this pleading, the Morleys continue to accrue fines from Association.

90.     As of the date of the filing of this pleading, the Morleys live in fear that the Association will: trespass on their property and remove the existing fence, endangering their nine-year-old disabled son if he plays outside or forcing him to remain inside his home; levy additional fines; file liens against their homestead; and pursue them for the legal fees the Association continues to incur while it ignores its obligations under and otherwise violates state and federal fair housing laws.

91.     The Defendants have failed to grant the Morleys a reasonable accommodation, in spite of having been provided sufficient documentation of M.M.'s disability, the ramifications of which would be ameliorated if the existing fence is allowed to remain, as recommended by his physician.

92.     The requested accommodation (i.e., allowing the existing fence to remain) is reasonable as it is both efficacious and proportional to the costs to implement it.

93.     The Defendants' failure to modify the Association's policies to accommodate for M.M.'s disabilities is discriminatory and unlawful.

94.    Waiving its policy so that the Morleys may live in their home within the Harbour Walk Community with the existing fence would not: (1) result in substantial physical damage to the property of others or that of the Harbour Walk Community; (2) pose an undue financial and administrative burden to the Harbour Walk Community, the Association, the Defendants, or the Association's other Directors or Committee Members; or (3) fundamentally alter the nature of the Harbour Walk Community's or the Association's operations.

95.    The Defendants engaged in discriminatory conduct regarding the Morleys' request for accommodation knowing and/or recklessly disregarding the fact that the conduct violates their legal obligations to accommodate persons with disabilities.

96.    The Defendants' actions were intentional, deliberate, willful, and in total and reckless disregard of the Morleys' rights, and show total indifference to M.M.'s disabilities.

97.    The Morleys have been injured by the Defendants' discriminatory housing practices and therefore qualify as "aggrieved persons" pursuant to 42 U.S.C. § 3602(i).

98.    As a direct and proximate result of the Defendants' conduct, the Morleys have suffered and continue to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of their right to equal housing opportunities regardless of disability.

99.    The Morleys retained Attorney Dorman to represent them in matters and proceedings prior to the filing of this lawsuit and have already paid her reasonable fees for her services and have requested that Attorney Dorman continue to monitor and otherwise represent their interests in the instant lawsuit, HUD proceedings, and other matters associated with the Defendants' violation of their rights under fair housing laws and to pay her reasonable fees for her services.

100.    The Morleys have retained undersigned counsel to represent them in this matter and other matters associated with the Defendants' violation of their rights under fair housing laws and have agreed to pay them reasonable fees for their services.

101.    All conditions precedent to the Morleys' bringing this action have occurred, or the performance of such conditions have been waived by the Defendants.

## V. CAUSES OF ACTION

### COUNT I
### FEDERAL FAIR HOUSING ACT
### FAILURE TO REASONABLY ACCOMMODATE
### IN VIOLATION OF 42 U.S.C. § 3604(f)(3)(B)

102.    The Morleys re-allege and incorporate by reference Paragraphs 1 though 101, as if fully set forth herein.

103.    M.M. has a disability-related need to have the existing fence remain, without interruption.

104.    In order to have equal use and enjoyment of their home, it is necessary that the Morleys have the ability to live with the existing fence, without interruption.

105.    At all times relevant, the Association had actual knowledge of M.M.'s disabilities, as well as knowledge of his need to have the existing fence, without interruption.

106.    The Morleys provided reliable, third-party verification of M.M.'s disability-related need for an accommodation so that he may reside at his home with a fence that ensures his security and protection, and thus assists him in coping with his disabilities.

107.    Requiring the removal of the existing fence as a precedent condition to considering a request for accommodation is illegal.

108.    The Defendants not only failed to modify the Association's policies needed to grant a reasonable accommodation to the Morleys, but refused to even consider their request. Such

refusal to consider, or otherwise grant, a reasonable accommodation constitutes a denial of the Morleys' accommodation request.

109.    The Association's actions were in total and reckless disregard of the Morleys' rights, and were indifferent to M.M.'s disability-related needs.

110.    Defendants, through the conduct and acts described above, violated 42 U.S.C. § 3604(f) by refusing to make reasonable accommodations to the Association's rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling.

111.    As a direct and proximate result of Defendants' failure to accommodate or even consider the Morleys' accommodation request, the Morleys suffered, and continue to suffer, irreparable loss and injury including, but not limited to, monetary damages, mental anguish, loss of dignity, emotional distress, humiliation, invasion of privacy, loss of their rights to equal housing opportunities regardless of disability, and loss of access to their dwelling.

**WHEREFORE,** Plaintiffs, MICHAEL MORLEY, MICHELLE MORLEY, individually, and as the parents, natural guardians, and next friends of M.M., a minor, and M.M., by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHELLE MORLEY, demand judgment against the Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" D. PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO, declaring that the Defendants' actions violated the FHA by discriminating against a person with disabilities and associated persons and awarding the Morleys compensatory and punitive damages, attorneys' fees, costs, and all amounts necessary to reimburse the Morleys pursuant to Fla. Stat. § 720.305(1) for their share of assessments levied by the Association to

fund its expenses of litigation, as well as any other such relief as this Court deems just and equitable.

**COUNT 2**
**DISCRIMINATION IN**
**THE PROVISION OF SERVICES OR FACILITIES**
**IN CONNECTION WITH A DWELLING**
**(42 U.S.C. § 3604(f)(2))**

112.    The Morleys re-allege and incorporate by reference Paragraphs 1 through 111, as if fully set forth herein.

113.    The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability]." 42 U.S.C. § 3604(f)(2).

114.    M.M. has a disability-related need to have the existing fence remain, without interruption.

115.    At all times relevant to this complaint, Defendants had actual knowledge of M.M.'s disability and disability-related need for an accommodation.

116.    Notwithstanding the same, the Association intentionally and unlawfully discriminated against the Morley's because of M.M.'s need for the existing, protective fence.

117.    The Defendants have fined the Morleys and threatened to trespass on the Morleys' property and remove the Morleys' existing fence, leaving their nine-year-old disabled son exposed and unprotected, levy additional fines, file liens against the Morleys' homestead, and pursue the Morleys' for legal fees as well as costs associated with fence removal.

118.    The Defendants, knowing of M.M.'s disability-related need to have the existing, protective fencing remain, nonetheless threatened, by email and certified mail, that they will trespass on the Morleys' property and remove their fence, leaving their nine-year old disabled son exposed and unprotected.

119.    The Defendants' foregoing acts constitute discrimination against a disabled person in the terms, conditions, or privileges of sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2).

120.    The Defendants' actions were in total and reckless disregard of the Morleys' rights, and were indifferent to M.M.'s disability-related needs.

121.    As a direct and proximate result of Defendants' discrimination in the terms, conditions, or provisions of services, the Morleys suffered, and continue to suffer, irreparable loss and injury including, but not limited to, monetary damages, mental anguish, loss of dignity, emotional distress, humiliation, invasion of privacy, loss of their rights to equal housing opportunities regardless of disability, and loss of access to their dwelling.

122.    As a further direct and proximate result of the Defendants' discrimination in the terms, conditions, or provisions of services, the Morleys suffered, and continue to suffer, risk of and fear of risk of, future harm and injury to their nine year-old son as his disability renders him susceptible to impulsive behavior, including spontaneous and sudden running, dashing around and climbing in situations when it is inappropriate and unsafe, which the existing fence is designed and erected to prevent and the removal of which eliminates such protection and safety.

    **WHEREFORE,** Plaintiffs, MICHAEL MORLEY, MICHELLE MORLEY, individually, and as the parents, natural guardians, and next friends of M.M., a minor, and M.M., by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHELLE MORLEY, demand judgment against the Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" D. PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO, declaring that the Defendants' actions violated the FHA by discriminating against a person with disabilities and associated persons and awarding the Morleys compensatory

and punitive damages, attorneys' fees, costs, and all amounts necessary to reimburse the Morleys pursuant to Fla. Stat. § 720.305(1) for their share of assessments levied by the Association to fund its expenses of litigation, as well as any other such relief as this Court deems just and equitable.

### COUNT 3
### FLORIDA FAIR HOUSING ACT
### FAILURE TO REASONABLY ACCOMMODATE
### IN VIOLATION OF FLA. STAT. § 760.23(9)(b)

123.    The Morleys re-allege and incorporate by reference Paragraphs 1 through 111, as if fully set forth herein.

124.    The discriminatory actions of Defendants in the above federal claims are so related to the state claim that they are part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

125.    Defendants, by the illegal, discriminatory conduct as described above, have violated the FFHA, Fla. Stat. §760.20, *et seq.*, by discriminating against Plaintiff M.M., an individual with disabilities, and parents, Plaintiff Michael and Michelle Morley.

126.    Defendants failed and otherwise refused to provide a reasonable accommodation in violation of §760.23(9)(b), Florida Statutes.

127.    As a direct and proximate result of Defendants' failure to accommodate, the Morleys suffered and continue to suffer, irreparable loss and injury including, but not limited to, monetary damages, mental anguish, loss of dignity, emotional distress, humiliation, and loss of their rights to equal housing opportunities regardless of disability.

**WHEREFORE**, Plaintiffs, MICHAEL MORLEY, MICHELLE MORLEY, individually, and as the parents, natural guardians, and next friends of M.M., a minor, and M.M., by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHELLE

MORLEY, demand judgment against the Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" D. PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO, declaring that the Defendants' actions violated the FHA by discriminating against a person with disabilities and associated persons and awarding the Morleys compensatory and punitive damages, attorneys' fees, costs, and all amounts necessary to reimburse the Morleys pursuant to Fla. Stat. § 720.305(1) for their share of assessments levied by the Association to fund its expenses of litigation, as well as any other such relief as this Court deems just and equitable.

## COUNT 4
## ILLEGAL INTIMIDATION

128.   The Morleys re-allege and incorporate by reference Paragraphs 1 though 111, as if fully set forth herein.

129.   The Association, in spite of being apprised of M.M's disability-related need for the disputed fence, repeatedly threatened the Morleys with trespass, fence removal, fines, liens on their homestead, legal fees, and costs if they did not remove the fence.

130.   The Association violated 42 U.S.C. § 3617 of the FHA and §760.37 of the FFHA by coercing, intimidating, threatening, and interfering with the Morleys in the exercise and enjoyment of their Fair Housing rights.

131.   The discriminatory conduct of the Defendants was intentional, willful, and taken in disregard for the Morleys' rights.

132.   As a direct and proximate result of the Defendants' conduct, the Morleys do not want to leave their home, carry great trepidation when leaving their home that the Defendants will trespass onto their property and remove the Morley's protective fence, experience paranoia in and around the Harbour Walk Community that other residents are questioning, judging,

ridiculing and otherwise criticizing them, and otherwise do not feel welcome, comfortable, or safe from the hostility created, culled, and otherwise fostered by the Defendants.

133.    As a direct and proximate result of the Defendants' conduct, the Morleys have suffered and continue to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of their right to equal housing opportunities regardless of disability.

**WHEREFORE,** Plaintiffs, MICHAEL MORLEY, MICHELLE MORLEY, individually, and as the parents, natural guardians, and next friends of M.M., a minor, and M.M., by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHELLE MORLEY, demand judgment against the Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" D. PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO, declaring that the Defendants' actions violated the FHA by discriminating against a person with disabilities and associated persons and awarding the Morleys compensatory and punitive damages, attorneys' fees, costs, and all amounts necessary to reimburse the Morleys pursuant to Fla. Stat. § 720.305(1) for their share of assessments levied by the Association to fund its expenses of litigation, as well as any other such relief as this Court deems just and equitable.

## VI. THIS COURT'S POWER TO GRANT RELIEF

134.    The Morleys re-allege and incorporate by reference Paragraphs 1 though 111, as if fully set forth herein.

135.    The Morleys have suffered and incurred irreparable damage, and continue to suffer and incur irreparable damage.

136.    The FHA, FFHA, and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the FHA and the FFHA. The Court, in the exercise of its equitable jurisdiction may award financial relief, accommodation directives, policy modification, and restoration of access privileges to prevent and remedy any violation of any provision of law enforced by the FHA or the FFHA.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, MICHAEL MORLEY, MICHELLE MORLEY, individually, and as the parents, natural guardians, and next friends of M.M., a minor, and M.M., by and through his parents, natural guardians, and next friends, MICHAEL MORLEY and MICHELLE MORLEY, respectfully request that this Court:

a) Enter judgment declaring the discriminatory housing practices of the Defendants, HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC., CHARLES "CHUCK" D. PAGLICCO, JOHN DA PUZZO, and SUSAN AGRUSO, violate the FHA and FFHA;

b) Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining and prohibiting Defendants, including but not limited to, Association Members, future Members, Board of Directors, Officers, property managers, employees, agents, volunteers, attorneys, and representatives, from removing, tampering with, altering, affecting, inhibiting, precluding, depriving, limiting, or otherwise interfering with the unfettered, continuous presence of the existing fence on the Morleys' property;

c) Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining and prohibiting Defendants, including but not limited to, Association

Members, future Members, Board of Directors, Officers, property managers, employees, agents, volunteers, attorneys, and representatives, from refusing to review or grant the Morleys' three (3) additional permit requests which are unrelated to fencing but involve safety and/or elimination of potential hazards (permit requests attached as Exhibit 15);

d)   Enter a permanent injunction enjoining and prohibiting Defendant HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC. from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to enjoy a dwelling;

e)   Requiring Defendant HARBOUR WALK  HOMEOWNERS' ASSOCIATION, INC. to notify and distribute, in writing to each and every resident of the HARBOUR WALK HOMEOWNERS' ASSOCIATION, INC. community, a legal statement enumerating its residents' FHA and FFHA rights with respect to, among other things, disability-related accommodations;

f)   Awarding to the Morleys such damages as would fully compensate them for their injuries caused by HARBOUR WALK  HOMEOWNERS' ASSOCIATION, INC.'S and the other Defendants' discriminatory and tortious conduct;

g)   Awarding to the Morleys punitive damages;

h)   Awarding to the Morleys their attorneys' fees and costs incurred prior to the filing of this lawsuit associated with the protection of their fair housing rights;

i)   Awarding to the Morleys their attorney's fees and costs incurred in bringing this action and all other proceedings and matters related to, associated and affiliated with enforcement of the FHA and FFHA and otherwise associated with the Morleys' protection there under;

j)   Awarding to the Morleys their attorneys' fees and costs incurred in bringing this action to protect their right to privacy; and

k)   Granting such other relief as justice may require.

## VIII. DEMAND FOR JURY TRIAL

The Morleys demand a jury trial for all issues so triable.

Respectfully submitted,

| | | |
|---|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC | LORI M. DORMAN, P.A.[1] |
| 207 SE Tuscawilla Road | 931 Village Blvd, #905-322 | 515 9th Str. East, Ste. 100 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 | Bradenton, FL 34208 |
| Telephone: (352) 224-5699 | Office: (561) 596-6329 | Telephone:  (941) 747-0888 |
| Facsimile:  (888) 400-1464 | dvenza@venzalawpllc.com | loridorman@ BPDLawOffice.com |
| marcy@floridaanimallawyer.com | | |

BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiffs*

BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiffs*

BY: *s/ Lori M. Dorman*
Lori M. Dorman, Esq.
Florida Bar No. 075401
*Counsel for Plaintiffs*

---

[1] BAKER, PAUL & DORMAN, A Partnership of Professional Associations